WILLIAM H. MULLER, PROSECUTOR, v. HUGH MAC-CRACKEN, JOHN D. LYNN, CHARLES PEARCE, COMMISSIONERS OF THE POLICE PENSION FUND COMMISSION OF THE BOROUGH OF BOGOTA, ETC., ET AL., RESPONDENTS.

Argued February 15, 1943—Decided February 19, 1943.

Before Justice BODINE (at chambers under the statute).

For the prosecutor, *Landau & Mehler.*

For the respondents, *Warren Dixon, Jr.*

BODINE, J. The writ brings before the court a resolution of the Police Pension Fund Commission of the Borough of Bogota passed August 6th, 1942, wherein it was resolved that William H. Muller be retired as a member of the police department of the Borough of Bogota on half pay as a sergeant of the police force as of the 8th day of August, 1942. This decision of the board became necessary if the prosecutor was in fact 65 years of age, or older, on the day in question. *N. J. S. A.* 43:16-1.

The minutes of the board's meeting on August 6th, 1942, returned with the writ, show that all members of the commission were present when the meeting was called to order at 8:00 o'clock. There was also present at this meeting the prosecutor, who was represented by William Mehler, Esq., his attorney. The board proceeded to examine the data presented with reference to Muller's age. The prosecutor did not take the witness stand or has he ever testified respecting his own age. No birth certificate is procurable from the New York City Department of Health, where he was born. There was, however, in the evidence on this return, proof of the birth certificate of a younger brother born November 4th, 1878.

Muller was married July 14th, 1897, for the first time, and the records of the Department of Health of New York City show that at that time his age was stated to be 21. When he married for the second time on August 15th, 1928, the original record of marriage showed that his age was stated to be 50 years and the date of his birthday was stated to be August 8th, 1877. The police records also show that when he joined the force January 1st, 1916, his age was stated to be 38.

To controvert this evidence was an application to the Police Benefit Association, which was a self-serving declaration, made by the prosecutor as to his age. Similarly, there was a baptismal certificate issued when he joined a church. There is no other way that the information contained in applications for marriage licenses can be procured except from those who apply for the license.

Of course, a scrivener might make a mistake, but there

is no reason to suppose that two or more scriveners make identical mistakes. Then, the circumstance that the prosecutor does not take the witness stand to swear that he was not born August 8th, 1877, is a strong circumstance against the asserted claim.

In addition to the baptismal certificate and the application for the Police Benefit, which is not predicated upon age but service in the police force, the deposition of prosecutor's older brother, who lives at Gloversville, New York, was taken. He testified that the prosecutor was born in New York City August 8th, 1879; that he recalls the circumstance because he was about 7 or 8 years old. This brother left home when he was 14, and has had little to do with the family since. His deposition is not convincing and he speaks of the children being about four years apart. He was, however, mistaken because the last child was born November 4th, 1878. So it would seem impossible for the prosecutor, the third child, to have been born August 7th, 1879, and the proofs establish that he had stated twice when he was applying for a marriage license that he was born August 8th, 1877. I say he stated, and I do so advisedly, because there would be no other way in which the clerk in the marriage license bureau could have obtained such information if not from him.

Under our law, he is obliged to apply for his marriage licenses in person. He had an opportunity to read all that was written thereon, and he admitted that the signature to the licenses was in his handwriting. This was the best evidence in the case that his retirement was proper, under the circumstances adduced before the board and not controverted in the depositions, except by the vague testimony of his brother, who would have had little opportunity to know much of anything about the date of birth except as he might have observed the celebration of birthdays and what not. This he does not mention, so at best his deposition is of little value.

The case of *Webster* v. *Municipal Employees' Pension Commission,* 115 *N. J. L.* 56, I do not regard as controlling upon me. The question at issue in that case was dependency, which called for a judicial determination. The question in this case before the respondent board was whether the prosecutor

had reached the age of 65. If so, the statute says he "shall be retired" on half pay. At all events, I think the judgment of the board was reached in a judicial manner. The prosecutor was present with counsel. The data which the board had gathered was presented at a regular meeting. There was full opportunity to examine not only the proofs but to controvert them. The Police Benefit Association application and the baptismal certificate, if it was that of the prosecutor, were no more than self-serving declarations.

In the case of *Kiely* v. *MacMurray, 5 N. J. Mis. R.* 1091, the birth certificate of the daughter of the police officer, in which his age was stated, was said not to be evidential, but in the present case there is proof that the information contained in the marriage applications was given by the applicant.

The case of *Moore* v. *Fire and Police Pension, &c., 10 N. J. Mis. R.* 854, is predicated upon an entirely different set of facts. There the commission refused to weigh and consider the proofs. They decided against the applicant because the ceremonial marriage had not been established. In this case, all the proofs considered establish a birth on August 8th, 1877, and not August 8th, 1879.

Mention has been made of the prosecutor's second marriage on August 16th, 1928, when he was more than 50 years of age. If the prosecutor was over 50, when he contracted this marriage, his wife would not be entitled to a pension at his death and conversely if he was not 50. *N. J. S. A.* 43:16-3 At the time of the marriage, his wife was 21 years of age and is now 35, and has a long life expectancy.

The question at issue is one of importance both to the prosecutor and to the borough. However, in weighing the evidence I think the proofs preponderate in favor of the determination by the commission.

The writ will be dismissed, but without costs.